## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ROBERT J. ROMANCZUK,**

> **Plaintiff,**

> **vs.**                                                                      **Civ. No. 15-401  KK**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

> **Defendant.**

### MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** is before the Court on Plaintiff's Motion to Remand for Rehearing, With Supporting Memorandum ("Motion"), filed on October 13, 2015.  (Doc. 18.)  The Commissioner of Social Security ("Commissioner") filed a Response on January 11, 2016 (Doc. 21), and Plaintiff filed a Reply on January 28, 2016.  (Doc. 22.)  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

### I.  Standard of Review

    Judicial review in a Social Security appeal is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether substantial evidence supports the Commissioner's final decision[2]; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).   If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 5, 10, 11.)

[2]  A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously examine the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) he is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If the claimant cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true

---

[3] 20 C.F.R. pt. 404, subpt. P. app. 1.

despite the presence of counsel." *Henrie*, 13 F.3d at 361. "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination. *Madrid*, 447 F.3d at 791-92. The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

## III.  Background and Procedural Record

Claimant Robert Romanczuk ("Mr. Romanczuk") was born on May 17, 1992. (Tr. 56.[4]) As of January 2010, Mr. Romanczuk had completed the eleventh grade.[5] (Tr. 366.)

Mr. Romanczuk was initially found eligible for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3), effective March 1, 2000, at the age of seven, due to a seizure disorder and organic mental disorder. (Tr. 68.) Because Mr. Romanczuk began receiving benefits as a child, regulations required that his eligibility for SSI be redetermined when he turned 18.[6] On May 26, 2010, before the Social Security Administration ("SSA") issued its redetermination decision, Mr. Romanczuk's mother, Cindy A. Gray ("Ms. Gray"), applied separately for childhood disability benefits on Mr. Romanczuk's behalf under Title II of the Social Security Act, 42 U.S.C. § 401, alleging impairments of "febrile seizure disorder" and "behavior problems."[7] (Tr. 304-06, 366.)

---

[4] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 15) that was lodged with the Court on August 10, 2015.

[5] Mr. Romanczuk testified at the administrative hearing he planned to get his GED. (Tr. 482.)

[6] *See* 20 C.F.R. § 416.987(a) (defining requirements for redetermination at age 18).

[7] *See* 20 C.F.R. § 404.350 – 352 (defining who is entitled to childhood disability benefits under Title II).

Ms. Gray alleged an onset date of May 17, 2010, Mr. Romanczuk's eighteenth birthday.[8] (Tr. 304.)

As part of its review, the SSA requested Mr. Romanczuk's medical records, but found they were insufficient to address Mr. Romanczuk's alleged impairments. (Tr. 69.) The Disability Determination Services therefore purchased consultative examinations from George DeLong, Ph.D., to address Mr. Romanczuk's alleged behavioral problems, and from Mark Brecheisen, D.O., to address Mr. Romanczuk's alleged seizure disorder. (Tr. 69, 151-58, 160-64.) Their consultative reports, *inter alia*, were subsequently reviewed by State agency nonexamining medical consultants Stephen Fair, Ph.D., and Ernest Griffith, M.D. (Tr. 165-78, 184-87, 409-16.) On March 23, 2011, the SSA completed its age-18 redetermination and found that Mr. Romanczuk was not disabled under the definition of disability for an adult.[9] (Tr. 56, 60-62.) The SSA explained that Mr. Romanczuk's medical reports documented good vision in both eyes, that his seizure disorder was under control with his current medication regimen, and that he was able to act in his own interests. (Tr. 60.) Mr. Romanczuk's benefits were ceased effective March 1, 2011. (*Id.*)

On April 20, 2011, Ms. Gray sought reconsideration on Mr. Romanczuk's behalf of both his age-18 redetermination decision and his childhood disability benefits application. (Tr. 63-64.) The SSA requested additional functional and medical information, and ultimately notified Mr. Romanczuk and Ms. Gray that if they failed to comply with the information requests within a specified period of time a decision would be made based on the information available. (Tr. 70.) On August 12, 2011, the Disability Determination Services proposed to cease

---

[8] *See* C.F.R. § 404.350(a)(5) (defining eligibility for childhood disability benefits if you are 18 years old or older and have a disability that began before you became 22 years old).

[9] See SSR 11-2p, 2011 WL 4055665, at *2 (explaining that adult criteria is used for determining disability in young adults).

Mr. Romanczuk's benefits due to insufficient evidence, failure to cooperate, and no medical evidence to substantiate worsening of his alleged impairments. (*Id*.) On October 14, 2011, Disability Hearing Officer Mike Campagna issued a Disability Redetermination Decision that included an Analysis of Evidence and Findings of Fact. (Tr. 65-73.) Mr. Campagna determined that there was "insufficient medical evidence to document the severity of the claimant's impairments at the present time and worsening of his impairments. The claimant's benefits are being ceased due to insufficient medical evidence, failure to cooperate issues." (Tr. 73.) Mr. Campagna stated that the childhood disability benefits application under Ms. Gray's social security number was adopted into his decision based on common issues. (*Id*.) On December 6, 2011, Ms. Gray sought reconsideration of the disability hearing decision and requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 77-78.)

On September 14, 2012, Ms. Gray applied a second time for childhood disability benefits on Mr. Romanczuk's behalf under Title II of the Social Security Act, alleging disability since March 1, 2000, due to febrile seizure disorder and behavior problems. (Tr. 307-08.) On that same date, Ms. Gray requested a hearing by an ALJ. (Tr. 263-63A.) Mr. Romanczuk's second application for childhood disability benefits was denied.[10] (Tr. 270-72.)

On February 6, 2014, the ALJ conducted the administrative hearing by phone on Mr. Romanczuk's Title XVI and Title II claims.[11] (Tr. 464-500.) Mr. Romanczuk appeared with his mother, Ms. Gray, acting on his behalf.[12] (Tr. 467-68.) The ALJ took testimony from

---

[10] This denial is undated.

[11] The record supports that hearings were scheduled for December 19, 2013, and May 23, 2013, both which Ms. Gray sought to reschedule. (Tr. 224-25.) Ms. Gray specifically requested a telephonic hearing. (Tr. 223, 225-26.)

[12] Mr. Romanczuk is represented in this proceeding by Gary J. Martone. (Tr. 11.)

Ms. Gray (Tr. 470-79, 491-99), Mr. Romanczuk (Tr. 479-87), and an impartial vocational expert ("VE"), Judith Beard.  (Tr. 487-91.)

On March 19, 2014, the ALJ issued an unfavorable decision.  (Tr. 13-26.)  At step one, he found that Mr. Romanczuk had not engaged in substantial gainful activity since his alleged onset date of May 17, 2010.  (Tr. 19.)  Because Mr. Romanczuk had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two and found that Mr. Romanczuk suffered from severe impairments of "a mental impairment variously diagnosed to include ADHD, ADD, and borderline intellectual functioning; and a correctable visual disorder."  (*Id.*)  The ALJ also determined that Mr. Romanczuk suffered from a nonsevere impairment of seizures.  (*Id.*)  At step three, the ALJ concluded that through the date last insured, Mr. Romanczuk did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20.)

Because he found that Mr. Romanczuk's impairments did not meet a Listing, the ALJ went on to assess Mr. Romanczuk's RFC, which is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404,1520(a)(4), 404.1520(e, f, g), 416.920 (a)(4) and 416.920(e, f, g).  The ALJ stated that

> [a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations since May 17, 2010 for his child's insurance benefits application; and since March 1, 2011, for his supplemental security income benefits, based on disability as a child: except that he is limited to occasional climbing of ramps and stairs.  He cannot climb ladders, ropes, or scaffolds.  He should avoid all exposure to operational control of moving machinery, unprotected heights, and exposure to hazardous machinery. He is suitable for occupations requiring only occasional depth perception.  He can understand, remember, and carry out simple instructions and make commensurate work related decision, respond appropriately to supervision, co-workers, and work situations, deal with routine changes in work setting, and maintain concentration,

persistence, and pace for up to and including two hours at a time with normal breaks throughout a workday.

(Tr. 21-22.)  The ALJ concluded that Mr. Romanczuk had no past relevant work, and proceeded to step five.  At step five, based on the testimony of the VE, the ALJ determined that considering Mr. Romanczuk's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Romanczuk could perform, including laundry worker, cleaner preparer, and furniture cleaner.  (Tr. 25-26.)

On April 1, 2014, Ms. Gray requested a review of the ALJ's decision on Mr. Romanczuk's behalf.  (Tr. 12.)  On March 23, 2015, the Appeals Council issued its decision denying Mr. Romanczuk's request for review and upholding the ALJ's final decision regarding his claim for childhood disability benefits.[13]  (Tr. 6-8.)  On May 11, 2015, Mr. Romanczuk timely filed a Complaint seeking judicial review of the Commissioner's final decision.  (Doc. 1.)

## IV.  Analysis

Mr. Romanczuk argues that the ALJ failed to properly evaluate the medical opinion evidence.  (Doc. 18 at 6-10.)  Mr. Romanczuk specifically asserts (1) that the ALJ failed to consider State agency examining medical consultant Dr. George DeLong's assessments regarding Mr. Romanczuk's abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual; (2) that the ALJ incorrectly disregarded Dr. DeLong's opinion because it was based on subjective complaints; and (3) that the ALJ failed to recognize that Dr. DeLong based his assessment, at least in part, on the diagnoses of borderline intellectual function, attention deficit disorder, and personality disorder.  (*Id.* at 8-9.)  Mr. Romanczuk further asserts that the ALJ failed to consider state agency nonexamining medical consultant's Dr. Ernest Griffith's opinion

---

[13] The Appeals Council indicated it was sending a separate letter regarding Mr. Romanczuk's SSI claim.  (Tr. 6.)

wherein he assessed an environmental limitation of "no concentrated extreme heat." (*Id.* at 9.) Mr. Romanczuk argues that including this limitation in the ALJ's RFC would eliminate the laundry worker job the VE identified, and then call into question whether the other two jobs identified are available in significant numbers. (*Id.*)

The Commissioner contends that the ALJ properly evaluated the medical opinion evidence. (Doc. 21 at 5-6.) The Commissioner asserts that the ALJ accorded moderate weight to Dr. DeLong's opinion and included nonexertional limitations he assessed in his RFC, but also found that some of the limitations Dr. DeLong assessed were based on Mr. Romanczuk's subjective complaints. (*Id.* at 5.) The Commissioner argues this is appropriate because an ALJ gives more weight to an opinion when the evidence is supported by objective evidence, and that Dr. DeLong's diagnoses, to the extent they are based on subjective evidence, do not amount to objective medical findings. (*Id.* at 21.) Finally, the Commissioner argues that there is no evidence in the record to show that Mr. Romanczuk had an impairment that required him to avoid extreme heat. (*Id.*) As such, the Commissioner contends that the Court need not address Mr. Romanczuk's argument that one of the jobs identified by the VE requires exposure to heat. (*Id.*)

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin*, 365 F.3d at 1215. "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Id.* (citing *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995)).[14] An ALJ is required to given controlling weight to the opinion of a treating physician if is it supported by

---

[14] These factors include the examining relationship, treatment relationship, length and frequency of examinations, the degree to which the opinion is supported by relevant evidence, the opinion's consistency with the record as a whole, and whether the opinion is that of a specialist. *See* 20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6).

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *Id.*  Generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a non-examining consultant is given the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."  *Hamlin*, 365 F.3d at 1215.  "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted . . . but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must 'provide specific, legitimate reasons for rejecting it.'"  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (quoting *Doyal v. Barnhart*, 331 F.3d 758, 764 ((10th Cir. 2003)).  An ALJ may not accept part of a medical opinion and discount the rest without explaining "why one part of [the] opinion was creditable and the rest was not."  *Id.* at 1292.

    **A.**    **Medical Evidence**

        **1.**    **George DeLong, Ph.D.**

On October 4, 2010, State agency examining medical consultant George DeLong, Ph.D., conducted a psychological evaluation on Mr. Romanczuk.  (Tr. 151-58.)  Dr. DeLong noted there was no clinical record available for review and that he reviewed an Adult Function Report prepared by Mr. Romanczuk's mother.  (Tr. 151.)  Dr. DeLong took a personal history and conducted a mental status exam.  (Tr. 151-54.)  Dr. DeLong also administered two diagnostic tests – the Wechsler Adult Intelligence Scale – IV and the Halsted-Reitan Trail Marking Procedure, Parts A and B.  (Tr. 154-155.)  Dr. DeLong's diagnostic impression was:

    Axis I:        Attention deficit disorder, inattentive type.

    Axis II:       Borderline intellectual functioning.

Personality disorder not otherwise specified with schizoid and
dependent features.

Axis III:        History of seizure disorder.
                 History of left hand/wrist fracture with open reduction.

(Tr. 155.)

Dr. DeLong assessed Mr. Romanczuk's mental limitations as follows:

Understanding and Memory:

This individual's ability to understand and remember locations and work like
procedures and very short and simple instructions is not significantly limited.  His
ability to understand and remember detailed instructions is moderately limited
associated with borderline intellectual function.

Sustained Concentration and Persistence:

This individual's ability to carry out very short and simple instructions on an
immediate basis in the office environment is not significantly limited.  His ability
to carry out detailed instructions, maintain attention and concentration for
extended periods, perform activities within a schedule, maintain regular
attendance and be punctual is moderately limited associated with borderline
intellectual function.  His ability to sustain an ordinary routine without special
supervision is mildly limited.  His ability to make simple work related decisions is
mild[ly] limited.  His ability to complete a normal work day and work week
without interruptions from psychologically base[d] symptoms is moderately
limited.  Limitations are associated with borderline intellectual function and
attention deficit disorder.

Social Interaction:

This individual's ability to interact appropriately with the general public, accept
instructions and respond appropriately to criticism from supervisors, maintain
socially appropriate behavior and adhere to basic standards of neatness and
cleanliness is moderately limited associated with borderline intellectual function
and personality disorder not otherwise specified.  His ability to ask simple
questions or request assistance is not significantly limited.

Adaptation:

This individual's ability to set realistic goals and make plans independently of
others is markedly limited associated with borderline intellectual function and
personality disorder not otherwise specified.  His ability to travel in unfamiliar
places or use public transportation and be aware of normal hazards and take

appropriate precautions is not significantly limited.   His ability to respond appropriately to minor changes in work routine is moderately limited associated with borderline intellectual function.

(Tr. 156.)

### (a)   Stephen Fair, Ph.D.

On December 3, 2010, State agency nonexamining medical consultant Stephen Fair, Ph.D., reviewed Dr. DeLong's report and prepared a Psychiatric Review Technique ("PRT") and a Mental Residual Functional Capacity Assessment ("MRFCA").   (Tr. 165-78, 184-87.)   On the PRT, Dr. Fair assessed that Mr. Romanczuk did not meet any of the listings demonstrating that he was presumptively disabled.   (Tr. 175-76.)   Dr. Fair commented that Mr. Romanczuk was able to perform simple, repetitive work.   (Tr. 177.)   On the MRFCA, Dr. Fair assessed that Mr. Romanczuk was able to persevere and concentrate on simple, repetitive work over an extended period of time; was able to interact appropriately with others in a work situation on a limited basis; and was able to adapt to changes in a simple work environment.   (Tr. 186.)

### (b)   David Yandell, Ph.D.

On August 23, 2011, State agency nonexamining medical consultant David Yandell, Ph.D., reviewed Mr. Romanczuk's records at reconsideration.   (Tr. 189-201.)   Dr. Yandell determined there was insufficient evidence to support that Mr. Romanczuk's alleged mental impairment had worsened due to Mr. Romanczuk's failure to cooperate.   (Tr. 201.)

### 2.   Mark Brecheisen, D.O.

On November 19, 2010, State agency examining consultant Mark Brecheisen, D.O., conducted a physical exam.   (Tr. 160-64.)   Dr. Brecheisen noted Mr. Romanczuk reported his past medical history was remarkable for seizure disorder, kidney stones, left wrist fracture, and asthma.   (Tr. 161.)   Dr. Brecheisen noted that Mr. Romanczuk stated he had not had a seizure

while awake for several years, although he believed he may still have seizures while sleeping. (Tr. 160.)   Mr. Romanczuk stated his seizures were controlled by medication.   (*Id.*) Dr. Brecheisen noted that Mr. Romanczuk reported he was able to perform his basic activities of daily living such as personal grooming and hygiene, as well as dress himself and drive a motor vehicle.   (*Id.*)  Dr. Brecheisen performed a physical exam and assessed that Mr. Romanczuk had no exertional limitations, no postural or manipulative limitations, and environmental limitations based on his history of seizure disorder that involved working around heights, working around moving machinery, and working with or around chemicals.  (Tr. 163-64.)

### (a)      Ernest Griffith, M.D.

On December 9, 2010, State agency nonexamining medical consultant Ernest Griffith, M.D., reviewed Dr. Brecheisen's report and prepared a Physical Residual Functional Capacity Assessment.  (Tr. 409-16.)  Dr. Griffith assessed no exertional limitations; postural limitations of frequent climbing of ramps/stairs and frequent balancing, and no climbing of ladders, ropes, or scaffolds; visual limitations of near and far acuity; and environmental limitations of avoiding concentrated exposure to extreme heat, fumes, odors, dusts, gases, and poor ventilation, and avoiding all exposure to machinery and height hazards.  (Tr. 410-13.)  Dr. Griffith indicated he based his environmental limitations on Mr. Romanczuk's reported history of seizure disorder and asthma.  (Tr. 411, 413.)

### (b)      James Hopkins, M.D.

On August 23, 2011, State agency nonexamining consultant James Hopkins, M.D., reviewed Mr. Romanczuk's records at reconsideration.  (Tr. 188.)  Dr. Hopkins noted that Mr. Romanczuk had failed to cooperate and there was insufficient evidence to adjudicate his case for reconsideration.  (*Id.*)

**B.**      **The ALJ Properly Evaluated Dr. DeLong's Opinion**

Relying in part on Dr. DeLong's opinion, the ALJ's RFC contained the following mental limitations:

> [Mr. Romanczuk] can understand, remember, and carry out simple instructions and make commensurate work related decisions, respond appropriately to supervision, co-workers, and work situations, deal with routine changes in work setting, and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a workday.  He would be suitable for jobs working primarily with things and not with people.

(Tr. 21-22.)   Mr. Romanczuk states that the ALJ's RFC conflicts with certain parts of Dr. DeLong's opinion and argues that the ALJ improperly evaluated Dr. DeLong's opinion because he discounted portions of Dr. DeLong's assessment based on Mr. Romanczuk's subjective complaints.  (Doc. 18 at 7-9.)  The Court does not agree.

The ALJ properly evaluated Dr. DeLong's opinion.  When an ALJ relies on a nontreating or examiner's opinion, he must explain the weight he is giving to it.  *Hamlin*, 365 F.3d at 1215. If an ALJ accepts only part of the opinion, he must provide reasons for the portions he rejects. *Chapo*, 682 F.3d at 1291.   Here, the ALJ satisfied both parts.   First, the ALJ accorded Dr. DeLong's opinion moderate weight "because he interviewed and tested the claimant." (Tr. 23.)  The ALJ also partially discounted Dr. DeLong's opinion because "his opinion appears to be based on the claimant's subjective complaints and reports and not on objective symptoms or the claimant's test results."    (Tr. 23.)   Mr. Romanczuk argues that the ALJ improperly discounted Dr. DeLong's opinion on this basis and rests his argument on *Thomas v. Barnhart*, 147 F. App'x 755, 759-60 (10th Cir. 2005).  (Doc. 18 at 8-9.)  Mr. Romanczuk's reliance on *Thomas*, however, is misplaced.

The ALJ did not substitute his judgment for that of Dr. DeLong.  In *Thomas*, the Tenth Circuit held that the ALJ had not properly evaluated the consulting psychiatrist's opinion

because he *totally rejected* it stating it was based solely on subjective findings from the evaluation.  147 F. App'x at 759.  The Tenth Circuit held that rejecting a psychological opinion "*solely* for the reason that it was based on [a claimant's] responses" impermissibly substituted the ALJ's judgment for that of the psychiatrist.  *Id*. at 760 (emphasis added).  The Tenth Circuit explained that "psychology is necessarily dependent, at least in part, on a patient's subjective statements," and that a psychological opinion may rest on both "observed signs and symptoms or on psychological tests."   *Id*. at 759 (quoting *Robinson*, 366 F.3d at 1083 (citing 20 CF.R. Subpart P, App. 1 § 12.00(B)).  That said, *Thomas* does not stand for the proposition that an ALJ cannot, in determining what *weight* to assign an opinion, consider that the opinion is based on subjective information that the ALJ may have determined is not credible.  To the contrary, the Tenth Circuit in *Beard v. Colvin*, _____ F. App'x ___, 2016 WL 805690, at *2 (10th Cir. 2016), specifically held that because the ALJ had found the claimant not credible, the ALJ could permissibly discount the psychologist's findings to the extent they relied on what the claimant had told him.[15]   *Id*.   Thus, the Tenth Circuit has not forbidden an ALJ from considering information unavailable to the psychologist that discredits the subjective statements upon which the psychologist relies.  That is precisely the case here.  The ALJ specifically stated that while he found that Mr. Romanczuk's medically determined impairments could reasonably be expected to cause his alleged symptoms, he found that Mr. Romanczuk's statements concerning the intensity, persistence and limiting effects not entirely credible.[16]  (Tr. 22.)  As such, it was proper for the

---

[15] The Court also held that the ALJ could not reject the psychologist's objective assessment without providing a reason.  *Beard*, 2016 WL 805690, at *2.

[16] The ALJ explained that Mr. Romanczuk participated in school, prepared homework, lived with roommates, took the bus at least once, watched television, took walks, listened to music, and applied for jobs.  (Tr. 20, 23.)  The ALJ also explained that the record contained no documentation of that Mr. Romanczuk had received mental health treatment since turning 18 years old, and that he testified he did not receive counseling.  (Tr. 23, 24.)

ALJ to discount those parts of Dr. DeLong's assessment that he deemed were based on Mr. Romanczuk's incredible subjective complaints.

Further, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo*, 682 F.3d at 1288. "The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (citing *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Here, the ALJ specifically stated he "accommodated [Mr. Romanczuk's] *objective* mental health limitation as described by Dr. Delong in the assigned residual functional capacity." (Tr. 24.) (Emphasis added.) Thus, the ALJ acknowledged that Dr. DeLong based his assessment, at least in part, on objective diagnoses. There is no error here.

For these reasons, the ALJ applied the correct legal standard in evaluating Dr. DeLong's opinion.

### C.     The ALJ's Failure to Discuss Dr. Griffith's Opinion Is Harmless Error

Mr. Romanczuk next argues that the ALJ failed to consider state agency nonexamining medical consultant's Dr. Ernest Griffith's opinion wherein he assessed an environmental limitation of "no concentrated extreme heat." (Doc. 18 at 9.) The Commissioner argues that the record does not support a finding that Mr. Romanczuk had an impairment that would limit his exposure to extreme temperatures. (Doc. 21 at 6.) The Court agrees.

The ALJ's failure to discuss Dr. Griffith's opinion is harmless error. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants. *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). However, the need for express analysis is weakened "[w]hen the ALJ

does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Id.* Further, an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. *Id.* at 578-79. In that case, the claimant is not prejudiced because giving greater weight to [the opinion] would not have helped h[im]." *Id.* at 579.

The ALJ did not need Dr. Griffith's opinion to determine Mr. Romanczuk's RFC. Here, the ALJ explicitly accorded great weight to Dr. Brecheisen's opinion. *Hamlin*, 365 F.3d at 1215. The ALJ's RFC also adopted in full Dr. Brecheisen's assessment in determining Mr. Romanczuk's physical RFC; *i.e.,* no exertional limitations, but "seizure restrictions such as not working around heights, moving machinery, or with or around chemicals[.]" (Tr. 21, 24.) Moreover, the limitations Dr. Griffith assigned were not inconsistent with the ALJ's RFC but for the environmental limitations that appear to be based on Mr. Romanczuk's reported history of asthma which is not supported by substantial evidence. Thus, there was no reason for the ALJ to reject or weigh Dr. Griffith's opinion unfavorably in order to determine Mr. Romanczuk's RFC.

The alleged error does not prejudice Mr. Romanczuk. "It is axiomatic that all of the ALJ's required findings must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (citing 42 U.S.C. § 405(g)). Here, Dr. Griffith assessed an environmental limitation that, *inter alia*, Mr. Romanczuk should avoid concentrated exposure to extreme heat.[17] (Tr. 413.) This limitation appears to be based on Mr. Romanczuk's reported history of asthma. (Tr. 411, 413.) However, there is no medical record evidence to support that Mr. Romanczuk was ever diagnosed with or treated for asthma. Additionally, neither Mr. Romanczuk nor Ms. Gray, on his behalf, ever identified or alleged on any of their

---

[17] Dr. Griffith assessed that Mr. Romanczuk should avoid concentrated exposure to extreme heat, fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 413.)

applications or disability and functional reports that asthma, or any pulmonary symptoms for that matter, was a basis for Mr. Romanczuk's alleged disability.  (*See* Tr. 63, 77, 84-91, 93-100, 102-109, 110-117, 118-131, 270, 309, 310, 327-340, 366.)   Further, neither Mr. Romanczuk nor Ms. Gray testified at the hearing that Mr. Romanczuk ever suffered with or was treated for asthma.  (*See* Tr. 464-500.)   Even assuming *arguendo* that Dr. Griffith assessed this limitation based on Mr. Romanczuk's seizures, Mr. Romanczuk reported that the only known trigger for his seizures were "bright flashing lights" and that he occasionally had seizures associated with migraine headaches.  (Tr. 160.)   As such, there is no evidence in the record to support that concentrated exposure to extreme heat triggered Mr. Romanczuk's seizures.  For these reasons, Mr. Romanczuk can show no prejudice from the ALJ's failure to discuss Dr. Griffith's opinion because the limitation Mr. Romanczuk asserts the ALJ should have included in his RFC is not supported by substantial evidence, and there is no reason to believe that an analysis or weighing of Dr. Griffith's opinion could advance Mr. Romanczuk's claim of disability.  Therefore, the alleged error is harmless.

## V.  Conclusion

The ALJ's decision is supported by substantial evidence and free of harmful error.  For the reasons stated above, Mr. Romanczuk's Motion to Remand for Rehearing is **DENIED.**

**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**